UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
CARL W. RELLSTAB,                   )
                                    )        CIVIL ACTION
           Plaintiff,               )
                                    )        NO. 19-40038-TSH
                                    )
    v.                              )
                                    )
DITECH FINANCIAL LLC and ORLANS     )
P.C.,                               )
                                    )
           Defendants.              )
_____ )

## ORDER AND MEMORANDUM ON DEFENDANTS' MOTIONS TO DISMISS (Docket Nos. 6 & 8)

### August 19, 2019

**HILLMAN, D.J.**

Carl W. Rellstab ("Plaintiff") filed this action asserting several claims against Ditech Financial LLC ("Ditech") and Orlans P.C. ("Orlans") in connection with the attempt to foreclose on his home. Defendants subsequently moved to dismiss all claims for failure to state a claim upon which relief can be granted. (Docket Nos. 6 & 8). For the reasons stated below, Defendants' motions are ***granted***.

### Background

On September 5, 2003, Plaintiff signed a note in the original principle amount of $195,000 payable to Countrywide Home Loans, Inc. and a mortgage granting Mortgage Electronic Registration System, Inc. a security interest in the property. Subsequently, the mortgage was assigned to Ditech. By signing the note, Plaintiff expressly waived his rights of presentment. *See* Docket No. 6-1 ¶ 9. Plaintiff then defaulted on the loan.

In July 2018, Plaintiff requested Ditech produce the original note for his review. He claims that Ditech's "vague and confusing statements were obviously in violation of the mortgage."

On January 31, 2019, Orlans, foreclosure counsel for Ditech, provided Plaintiff with a reinstatement quote of $199,302.48 through February 18, 2019. Plaintiff contests this amount.

On February 8, 2019, Ditech issued a payoff statement of $342,879.80, of which $173,943.44 was for the unpaid principal balance. Again, Plaintiff alleges this amount is "too high to be consistent with the terms of [his] mortgage." According to Plaintiff, HIS Trust-Homesavers "believe[s] the principal balance at this time should be in the $125,000 range."

Ditech scheduled a foreclosure sale for February 19, 2019. That day, Plaintiff requested and was granted an Ex Parte TRO enjoying the sale.[1]

## Legal Standard

A defendant may also move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v.*

---

[1] The TRO was granted by a state court judge. On February 26, 2019, this case was removed to this Court.

*American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

Because Plaintiff appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Nevertheless, Plaintiff's pro-se status does not excuse him from complying with procedural and substantive law. *See Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997).

## Discussion

1. Claims against Ditech

    a. Failure to Provide Accounting

"Under Massachusetts law, an equitable accounting is available only if there exists a fiduciary or trust relationship between the parties." *Chedd-Angier Production Co., Inc. v. Omni Publications Intern., Ltd.*, 756 F.2d 930, 937 (1st Cir. 1985). Further, "[t]he mere relationship between mortgage holder or servicer and borrower does not give rise to a fiduciary duty to the latter." *Shaw v. VAC Home Loans Servicing, LP*, 2013 WL 789195, at *4 (D. Mass. Mar. 1, 2013). Accordingly, Plaintiff was not entitled to an equitable accounting.[2]

---

[2] Insofar as Plaintiff claims that Ditech "overcharged" him, those claims are vague and conclusory. *See generally* Docket No. 1-1, at 3-12. Accordingly, Plaintiff has not stated a plausible entitlement to relief. *See Searle v. RBS Citizens, N.A.*, 2018 WL 1188756, at *8 (D. Mass. Mar. 7, 2018) (dismissing claim where

3

### b. Mass. Gen. Laws ch. 106

Plaintiff contends that Ditech's failure to present the note violated Mass. Gen. Laws ch. 106. This claim also fails. Plaintiff expressly waived his right to presentment. *See* Docket No. 6-1 ¶ 9 ("I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.").

Even if Plaintiff had not waived this right, however, "while Massachusetts law requires a mortgagee to possess the note in order to avoid having a foreclosure sale rendered void, it does not require the mortgagee to initiate judicial proceedings or produce the note before doing so." *Rice v. Wells Fargo Bank, N.A.*, 2 F. Supp. 3d 25, 36 (D. Mass. 2014); *see also Monges v. Wells Fargo Bank, Nat. Ass'n*, 2015 WL 1308146, at *10 (D. Mass. Mar. 23, 2015) ("Under Massachusetts law, a foreclosing party need not have physical possession of the note in order to foreclose.").

### c. RESPA

RESPA's "Dual Tracking" regulation, which prohibits foreclosures in certain situations, provides in relevant part: "[i]f a borrower submits a complete loss mitigation application after a services has made the fist notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a service shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale," unless certain exceptions apply. 12 C.F.R. § 1024.41(g). Further, RESPA provides that "[a] complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." *Id.* § 1024.41(b)(1).

---

the plaintiffs only "allege[d] generally that Defendants misrepresented the amount owed, or that Defendants inflated the amount and did not provide a proper accounting" (quotation marks and brackets omitted)).

4

Ditech contends that because the foreclosure sale was scheduled for February 19, 2019 and that Ditech only acknowledged that Plaintiff's loan modification application was complete as of February 1, 2019—18 days before the schedule foreclosure sale—Plaintiff failed to comply with RESPA's Dual Tracking provision.

Ditech identified the date of the foreclosure sale as February 19, 2019, but it is undisputed that the sale did not occur on that date, and still has not occurred. Although Ditech has cited no legal authority for the proposition that the scheduled date is the appropriate point of reference, the Court believes that it is.

> Pursuant to Regulation X:
>
> To the extend a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs, *such determination shall be made as of the date a complete loss mitigation application is received.*

12 C.F.R. § 1024.41(b)(3) (emphasis added). The date a complete application is received is, of course, before the foreclosure sale. Thus, if a determination is to be made at that point, a lender must use the scheduled sale date. *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1010 (11th Cir. 2016) ("Because we determine timeliness based on the scheduled date of the foreclosure sale as of the date the Borrowers' complete application was received, it is irrelevant to our timeliness analysis that Ocwen subsequently rescheduled the foreclosure sale for a later date."). *But see Dionne v. Federal Nat. Morg. Ass'n*, 110 F. Supp. 3d 338, 344 (D.N.H. 2015) ("The Defendants would have the court identify October 1 [the scheduled date] of the foreclosure sale for purposes of calculating the timeliness of the application, even though it is undisputed that the sale did not actually occur until January 12, 2015.").

If the Court adopted an interpretation that the relevant date was when the sale in fact occurred, without clairvoyant lenders, it would render meaningless the final clause of Section 12 C.F.R. § 1024.41(b)(3). *See Massachusetts Ass'n of Health Maintenance Org. v. Ruthardt*, 194 F.3d 176, 181 (1st Cir. 1999) ("[A]ll words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous." (quoting *United States v. Ven-Fuel*, 758 F.2d 741, 751-52 (1st Cir. 1985))). Accordingly, timeliness under Regulation X must be determined based on the scheduled date of the foreclosure sale.[3]

### 2. *Claims against Orlans*

For the reasons stated in Orlans' memorandum, their motion is granted. In short, Plaintiff's Complaint does not include any claims against Orlans.

### **Conclusion**

For the reasons stated above, Defendants' motions (Docket Nos. 6 & 8) are ***granted***.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[3] Because the Court finds that the statute is not ambiguous, the Consumer Financial Protection Bureau's interpretation is not entitled to deference. *See Christensen v. Harris County*, 529 U.S. 576, 588 (2000) (noting that "deference is warranted only when the language of the regulation is ambiguous"). Nonetheless, it is worth noting that the Consumer Financial Protection Bureau has adopted the same interpretation. *See* Amendments to the 2013 Mortgage Rules, 78 Fed. Reg. 60382, 60397 (Oct. 1, 2013) (explaining that "structuring the rule such that a borrower's rights may be added or removed because a foreclosure sale was moved or rescheduled would not provide the certainty or simplicity created by the proposed rule").